LAW OFFICE OF FELIX VINLUAN
Felix Q. Vinluan (FV6788)
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY11377
Tel. No. 718-478-4488
Fax No. 718-478-4588

LAW OFFICES OF MANUEL B. QUINTAL, P.C.
Manuel B. Quintal (MQ5186)
291 Broadway, Suite 1501
New York, NY 10007
Tel. No. 212-732-0055
Fax No. 212-587-8933
*Attorneys for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JANNACE MOJICA, on behalf of herself
and others similarly situated,

                              *Plaintiff*,                    Docket No. 18-cv-_____

    - against -                                     VERIFIED COMPLAINT
                                                    (Collective and Class Action)

NATIONAL STAFFING SOLUTIONS, INC.,
                              *Defendant.*                    Trial by Jury

------------------------------------------------------------x

**PLAINTIFF** JANNACE MOJICA, by undersigned counsel, respectfully alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendant and who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are: (i) entitled to unpaid wages from Defendant for all the time that they worked overtime hours and were not compensated and for which they did not receive proper overtime premium pay, as required by law, and; (ii) entitled to liquidated damages pursuant to FLSA, 29 U.S.C. § 201 *et seq*.

2.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed.R.Civ.P. 23, that they are entitled to back wages from Defendant for all of the time that they worked overtime hours and were not compensated and for which they did not receive proper overtime premium pay as required by the New York Labor Law and the supporting New York State Department of Labor regulations.

3.      The named Plaintiff has commenced this action seeking for herself, and on behalf of all similarly-situated employees, the correct overtime compensation, which they were wrongfully deprived, plus interest, damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1331 in that claims are asserted under the laws of the United States, specifically 29 U.S.C. §§ 201 *et seq.* This Court has supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

6.      Defendant has transacted substantial business activity within the state of New York which gives rise to the claims asserted by Plaintiff in this case.

## PARTIES

7.      Plaintiff Jannace Mojica ("Plaintiff") resides in the County of the Bronx, State of New York, and has been employed by the Defendant as a Physical Therapist Assistant in various healthcare facilities located in the Bronx.

8.      Upon information and belief, Defendant National Staffing Solutions, Inc. ("Defendant") is a foreign corporation incorporated in the state of Florida and doing business in

the state of New York, with principal executive offices at 603 6th Street NW, Winter Haven, FL 33881.

9.    Upon information and belief, Defendant National Staffing Solutions, Inc. is engaged in the business of healthcare staffing, with employees numbering more than two hundred employees and with gross annual income of more than twenty million dollars.

10.    At all times relevant to this action, Defendant was an "employer" of the Plaintiff within the meaning of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).

11.    At all times relevant to this action, Plaintiff was an "employee" of the Defendant within the meaning of the Fair Labor Standards Act and the New York Labor Law.

12.    At all times relevant to this action, Plaintiff was engaged "in commerce or in the production of goods for commerce", within the meaning of the Fair Labor Standards Act.

13.    Upon information and belief, Defendant employs or employed more than four (4) workers who fall under the category of "non-exempt employees" pursuant to the FLSA, and these employees regularly and recurrently either engaged in commerce or handled or otherwise worked on goods or materials that had been moved in or produced for commerce, such as when these employees handled physical therapy equipment and supplies manufactured and/or ordered from across state boundaries.

14.    Upon information and belief, Defendant had power over personnel decisions.

15.    Upon information and belief, Defendant had power over payroll decisions.

16.    Upon information and belief, Defendant had the power to hire and fire the Plaintiff, establish and pay her wages, set her work schedules and maintain her employment

3

records, and it acted with respect to the wage practices pertinent to the Plaintiff and the members of the Collective and Class.

17.    All of the acts alleged in this Complaint were authorized, ordered, and implemented by Defendant.

18.    At all relevant times, and upon information and belief, Defendant was and continues to be an "enterprise engaged in commerce" because it transacted business communications and negotiated agreements from its Florida office with its New York clients and/or employees, utilizing in the process the postal service or other courier delivery service, the phone, fax, and/or email communications systems that moved along interstate boundaries.

19.    Upon information and belief, at all relevant times, Defendant regularly communicated with its employees located in the state of New York, including herein Plaintiff, through phone, text, fax and/or email service systems. Defendant gave instructions to its employees located in New York with regard to their staffing assignments and/or instructions, and made inter-bank transactions, such as making direct deposits to its New York employees', including herein Plaintiff's, bank accounts opened and maintained in New York.

20.    Upon information and belief, at all relevant times, Defendants sourced out and entered into staffing agreements with healthcare facilities located in New York, and in the process engaged in acts that have effects in New York, such as when it signed staffing agreements with New York healthcare facilities, and/or sent staffing agreements or staffing assignments to New York clients or to New York employees, including to herein Plaintiff, a New York resident.

21.    Upon information and belief, at all times relevant, Defendant negotiated its staffing agreements with several New York-based (Bronx) healthcare facilities, such as but not

limited to the Ferncliff Nursing Home, the Workmen's Circle MultiCare Center, Morningside Nursing Home, Citadel Nursing Home, Hudson Pointe Nursing Home, and The Plaza, and drafted and revised these staffing agreements in New York.

22.    Upon information and belief, at all times relevant, Defendant negotiated its "Staffing Employment Understanding" with its New York-based employees, including herein Plaintiff, and drafted and revised these staffing employment understandings in the state of New York.

23.    Defendant, through its case managers and therapy recruiter, communicated with Plaintiff in New York, during all times relevant, either through phone, text, and/or email communications, and gave instructions to Plaintiff while in New York regarding Plaintiff's work assignments, scheduling, duties, and payroll issues.

24.    Upon information and belief, at all times relevant, Defendant sent invoices and/or bills to its New York-based clients for the services rendered by its New York-based employees, including herein Plaintiff, and earned, and continues to earn or derive substantial revenues from the state of New York.

## STATEMENT OF FACTS

25.    Plaintiff passed her licensure examination and secured a license to practice as a Physical Therapist Assistant in the state of New York sometime in or about January 2014.

26.    In or about June 2014, Defendant sent to Plaintiff in New York an email communication regarding its staffing assignment and instructions to Plaintiff embodied in a document entitled "Staffing Employment Understanding". The "Staffing Employment Understanding" indicated that Plaintiff was assigned to work at Ferncliff Nursing Home at 21 Ferncliff Drive, Rhinebeck, NY 12572, from July 7, 2014 through October 3, 2014.

27.     In or about March 2015, Defendant sent to Plaintiff in New York an email communication regarding its staffing assignment and instructions to Plaintiff embodied in a document entitled "Staffing Employment Understanding". The "Staffing Employment Understanding" indicated that Plaintiff was assigned to work at Workmen's Circle MultiCare Center at 3155 Grace Avenue, Bronx, NY 10469, from April 9, 2015.

28.     In or about September 2015, Defendant sent to Plaintiff in New York an email communication regarding its staffing assignment and instructions to Plaintiff embodied in a document entitled "Staffing Employment Understanding". The "Staffing Employment Understanding", which decreased Plaintiff's overtime rate, indicated that Plaintiff was assigned to work at Workmen's Circle MultiCare Center at 3155 Grace Avenue, Bronx, NY 10469.

29.     In or about January 2016, Defendant communicated to Plaintiff in New York and instructed Plaintiff to perform her physical therapy assisting services at the Morningside Nursing Home, likewise in the Bronx. Plaintiff did perform her therapy services at the Morningside Nursing Home from January 2016 through July 2017.

30.     Defendant assigned Plaintiff to work at other nursing home facilities located in the Bronx, New York, such as The Plaza, the Citadel Nursing Home, and the Hudson Pointe Nursing Home, and Plaintiff did perform her physical therapy assisting services at said Bronx nursing home facilities from July 2017 through March 2018.

31.     In or about April 2018, Defendant sent to Plaintiff in New York an email communication regarding its staffing assignment and instructions to Plaintiff embodied in a document entitled "Staffing Employment Understanding". The "Staffing Employment Understanding" indicated that Plaintiff was assigned to work at The Plaza at 100 West Kingsbridge Road, Bronx, NY 10468 from April 11, 2018.

32.     Plaintiff continues to work and renders physical therapy services at the Plaza at the Bronx, New York, within this District, up to the present time.

33.     When Defendant first gave an assignment to Plaintiff in July 2014, it paid Plaintiff a basic per hour rate of $13.00 and a maximum weekly per diem of $320.00 per week. It paid Plaintiff an overtime rate of $43.00. The maximum weekly per diem rate of $320.00 was conditioned on Plaintiff working 40 hours per week. If Plaintiff worked at 36 hours or less per week, there was prorated weekly per diem deduction.

34.     When Defendant assigned Plaintiff to work at the Workmen's Circle MultiCare Center in the Bronx, it paid Plaintiff a basic per hour rate of $13.00 and a maximum weekly per diem of $430.00 per week. It continued to pay Plaintiff an overtime rate of $43.00. The maximum weekly per diem of $430 was conditioned on Plaintiff working 40 hours per week. If Plaintiff worked at 36 hours or less per week, there was prorated weekly per diem deduction.

35.     Starting in or about September 2015, Defendant decreased the overtime rate of Plaintiff from $43 to $30 per hour.

36.     In so doing, Defendant did not properly and did not correctly pay Plaintiff her overtime compensation rate.

37.     Under pertinent Department of Labor regulations as well as pursuant to jurisprudence on the matter, the overtime compensation of Plaintiff would have been computed as one and a half times the Plaintiff's regular hourly rate. Further, Plaintiff's regular hourly rate would and should have been computed, thus: the basic per hour rate of $13.00 + ($430.00 divided by 40) = regular hourly rate.

38.     With a basic hourly rate of $13.00 and a maximum weekly per diem of $430.00, Plaintiff's regular hourly rate would and should have been $23.75.

39.     In an email message by Defendant's Therapy Recruiter to the Plaintiff in New York on October 1, 2018, the computation of Plaintiff's regular hourly rate was confirmed, thus:

> "The $13.00 is your hourly rate. You are paid $13.00 for every hour worked. The $430 is the maximum weekly per diem available for a 40 hour work-week. You can divide $430/40 hours to get $10.75 per hour. Your hourly rate is the combination of the $13.00 and the $10.75."

40.     With a regular hourly rate of $23.75, Plaintiff's overtime compensation rate would and should have been $35.625.

41.     Starting in or about September 2015, Defendant paid Plaintiff overtime rate only in the amount of $30.00 for each and every hour worked by Plaintiff in excess of forty (40) hours per week.

42.     Upon information and belief, during the collective and class periods, Defendant employed hundreds of licensed therapists, including the Plaintiff Mojica.

43.     During the collective and class periods, and at all times relevant herein, Plaintiff Mojica was employed by the Defendant as a licensed therapist assistant routinely expected to, and in fact, did, work in excess of 40 hours per week, but was not properly compensated for the time worked in excess of 40 hours per week as she was paid only $30.00 per hour, an amount that was less than one and a half times her regular hourly rate.

44.     At all times relevant, Plaintiff regularly worked more than forty (40) hours per week at the Bronx facilities where Defendant had assigned her.

45.     As and by way of example, Defendant required Plaintiff to render services at the Morningside facility in the Bronx during the week from December 4, 2016 through December 10, 2016, and Plaintiff worked sixty two hours and a half hours, as follows:

Dec. 4, 2016          - No work;
Dec. 5, 2016          - from 7:41 am to 7:08 pm, or for 11 hours;

Dec. 6, 2016      - from 7:41 am to 7:30 pm, or for 11 hours, 15 minutes;
Dec. 7, 2016      - from 7:40 am to 8:02 pm, or for 11 hours, 45 minutes;
Dec. 8, 2016      - from 7:47 am to 7:54 pm, or for 11 hours, 45 minutes;
Dec. 9, 2016      - from 7:42 am to 7:00 pm, or for 10 hours, 45 minutes;
Dec. 10, 2016     - from 2:12 pm to 8:21 pm, or for 6 hours.

46.    For this particular work-week, Defendant paid Plaintiff the gross amount of $1,619.00, which, upon information and belief, was broken down as follows: (a) $520 as base hourly rate (40 hours x $13.00); (b) $430 as weekly per diem rate, and; (c) $669.00 as overtime pay (22.3 hours x $30.00).

47.    Defendant did not pay Plaintiff the proper overtime compensation rate of at least one and a half times the regular hourly rate, which would have been $13.00 + ($430/40), or $13.00 + $10.75, OR $23.75 as regular hourly rate. The overtime premium rate would have been $23.75 x 1.5, or $35.625 per hour in excess of forty hours per week.

48.    Thus, in this example, Defendant paid Plaintiff the overtime compensation rate of $30.00, when it should have paid Plaintiff the correct overtime rate of $35.625 per hour.

49.    As and by way of another example, Defendant required Plaintiff to render services at the Hudson Pointe facility in the Bronx during the week from July 16, 2017 through July 22, 2017, and Plaintiff worked fifty four hours and fifteen minutes, as follows:

July 16, 2017     - No work;
July 17, 2017     - from 8:03 am to 6:27 pm, or for 10 hours;
July 18, 2017     - from 7:54 am to 6:31 pm, or for 10 hours;
July 19, 2017     - from 8:04 am to 6:28 pm, or for 10 hours;
July 20, 2017     - from 7:58 am to 7:02 pm, or for 10 hours, 30 minutes;
July 21, 2017     - from 8:01 am to 6:33 pm, or for 10 hours;
July 22, 2017     - from 2;13 pm to 5:56 pm, or for 3 hours 45 minutes.

50.    For this particular work-week, Defendant paid Plaintiff the gross amount of $1,377.50, which, upon information and belief, was broken down as follows: (a) $520 as base

hourly rate (40 hours x $13.00); (b) $430 as weekly per diem rate, and; (c) $427.50 as overtime pay (14.25 hours x $30.00).

51.     Defendant did not pay Plaintiff the proper overtime compensation rate of at least one and a half times the regular hourly rate, which would have been $13.00 + ($430/40), or $13.00 + $10.75, OR $23.75 as regular hourly rate. The overtime premium rate would have been $23.75 x 1.5, or $35.625 per hour in excess of forty hours per week.

52.     Thus, in this example, Defendant again paid Plaintiff the overtime compensation rate of $30.00, when it should have paid Plaintiff the correct overtime rate of $35.625 per hour.

53.     As shown by the examples above, Defendant regularly suffered or required Plaintiff to work in excess of forty (40) hours per week during the period of her employment.

54.     Although Plaintiff regularly worked more than forty (40) hours in most of her workweeks, Defendant did not pay her time and a half for the extra hours she worked beyond forty (40) in such workweeks.

55.     Defendant did not compensate Plaintiff at the federal or NYLL statutorily-required rate of one and one-half times her regular rate of pay, for any and all hours that Plaintiff worked per week in excess of forty (40).

56.     During the collective and class periods, and at all relevant times herein, upon information and belief, Defendant likewise employed other individuals similarly situated to and like the Plaintiff who also worked in excess of 40 hours per week, but were compensated an amount that was less than one and a half times their regular hourly rate, in violation of the FLSA and the New York Labor Law.

## COLLECTIVE ACTION ALLEGATIONS

57.     Pursuant to 29 U.S.C. §207, Plaintiff Mojica seeks to prosecute her FLSA claim as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since November 16, 2015 to the entry of judgment in this case (the "Collective Action Period"), as licensed therapists, and who were not compensated for all hours worked in excess of forty (40) hours per workweek at a rate of at least one and a half times the regular rate of pay (the "FLSA Collective").

58.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by the Defendant, and/or the Defendant has been aware of or should have known of all of the work that Plaintiff and the FLSA Collective have performed.

59.     As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to the Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to: willfully failing to pay Plaintiff and the members of the FLSA Collective overtime compensation for hours that they worked in excess of 40 hours per workweek at a rate of one and a half times their regular hourly rate.

60.     Defendant is aware or should have been aware that federal law required it to pay its licensed therapists-employees, including the Plaintiff and the members of the FLSA Collective, their overtime premium compensation for all hours worked in excess of 40 hours per workweek at the rate of at least one and a half times their regular hourly rate.

61.     Plaintiff and the FLSA Collective are or were paid overtime compensation rate at less than one and a half times their regular hourly rate.

62.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

63.     The number of the FLSA Collective is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are more than 100 members of the FLSA Collective during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims, and are fearful of retaliation.

64.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members.

65.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

66.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

67.     Plaintiff brings her New York Labor Law claim on behalf of all persons who were or are employed by Defendant at any time since November 16, 2012, to the entry of judgment in this case (the "Class Period"), as licensed therapists, and have not been properly paid or compensated overtime rate at an amount that is at least one and a half times their regular hourly rate, in violation of the New York Labor Law (the "Class").

68.     Excluded from the Class are the Defendant, Defendant's legal representatives, officers, directors, assigns and successors, and/or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; the Judge(s) to whom this

case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

69.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are approximately more than 100 members of the Class during the relevant Class Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims, and are fearful of retaliation.

70.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually, and these include, but are not limited to the following:

      a.    whether Defendant failed to compensate Plaintiff and the Class members for hours worked in excess of 40 hours per workweek at a rate of at least one and a half times their regular hourly rate;

      b.    whether Defendant's practice and/or policy of not properly compensating licensed therapists for all overtime hours worked, was instituted willfully or with reckless disregard of the law; and

      c.    the nature and extent of class-wide injury and the measure of damages for those injuries.

71.     The claims of Plaintiff are typical of the claims of the Class she seeks to represent.  Plaintiff and all members of the Class work or have worked for Defendant as hourly-paid licensed therapists. Plaintiff and the members of the Class enjoy the same statutory rights

under the NYLL to be paid wages for all hours worked, including overtime wages. Plaintiff and members of the Class have all sustained similar types of damages as a result of Defendant's failure to comply with the NYLL. Plaintiff and the members of the Class have all been injured in that they have been under-compensated due to Defendant's policy, practice and pattern of conduct.

72.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff understands that as a class representative, she assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately. Plaintiff recognizes that as a class representative, she must represent and consider the interests of the Class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the interests of the Class. Plaintiff recognizes that any resolution of the class action must be in the best interest of the Class. Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial. Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiff and the members of the Class.

73.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the contexts of wage and hour litigation, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

74.    This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).

### FIRST CAUSE OF ACTION
**(Violation of the Overtime Wage Provisions of the FLSA)**

75.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76.    Defendant has engaged in a widespread pattern, policy and practice of violating the FLSA, as detailed in this Complaint.

77.    At all times relevant, Plaintiff and the members of the Collective were employed by Defendant who were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

78.    At all times relevant, Plaintiff and the members of the Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

79.    At all times relevant, Defendant employed and/or continues to employ Plaintiff and each of the members of the Collective while engaged in commerce and Defendant continues to engage in commerce by providing services to its out-of-state healthcare facility-clients, within the meaning of 29 U.S.C. §§ 201 *et seq.*

80.    At all relevant times herein, upon information and belief, Defendant's business had annual gross revenues in excess of $500,000.00 (five hundred thousand dollars).

81.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent is attached hereto and incorporated by reference.

82.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect the Plaintiff and the members of the Collective.

83.    At all relevant times, the Defendant had a policy and practice of refusing to properly pay its licensed therapists their overtime compensation for their hours worked in excess of forty hours per workweek at an amount of at least one and a half times their regular hourly rate.

84.    Defendant has failed to pay Plaintiff and the members of the Collective the premium overtime wages to which they are entitled under the FLSA for all hours worked beyond forty (40) per workweek.

85.    Defendant's unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendant was aware or should have been aware that the practices described in this Complaint were unlawful.  Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiff and the members of the Collective.

86.    The foregoing conduct as alleged constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

87.    As a result of Defendant's willful violations of the FLSA, Plaintiff and the members of the Collective have suffered damages by being denied overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amount, liquidated damages, prejudgment interest, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**(Violation of NYLL Article 19 on Overtime Pay)**

88.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89.     Defendant did not pay Plaintiff and the members of the Class the proper overtime wages for all the time that each of them was suffered or permitted to work each workweek beyond forty hours.

90.     During their employment, Plaintiff and, upon information and belief, the members of the Class, regularly worked an average of between forty (40) and fifty five (55) hours per week.

91.     During such workweeks, Defendant did not compensate Plaintiff and the members of the Class at time and a half the regular hourly rate for all of the overtime hours they worked beyond forty hours per week.

92.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant, and protect Plaintiff and the members of the Class.

93.     Defendant has failed to pay Plaintiff and the members of the Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 hours per workweek.

94.     Upon information and belief, Defendant has failed to keep, make, preserve, maintain and furnish accurate records of time worked by the Plaintiff and each member of the Class.

95.     Through its knowing or intentional failure to pay Plaintiff and the members of the Class proper overtime wages for hours worked in excess of 40 hours per workweek, Defendant has willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

96.     Due to Defendant's willful violations of the NYLL, Plaintiff and the members of the Class are entitled to recover from Defendant their unpaid overtime wages, liquidated

damages as provided for by the NYLL, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated Collective Action members and members of the Class, respectfully requests that the Court grant the following relief:

1.      Designation of the First Cause of Action under the FLSA as a collective action on behalf of the Collective Action members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

2.      Certification of the Second Cause of Action under the New York Labor Law as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

3.      A declaratory judgment that the practices complained of in the First and Second Causes of Action herein are unlawful under the FLSA and the New York Labor Law;

4.      An injunction against the Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns as set forth in the First and Second Causes of Action herein;

5.      An award of unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA, the supporting United States Department of Labor

Regulations, as well as pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

      6.      An award of pre-judgment and post-judgment interest;

      7.      An award of costs and expenses of this action, together with reasonable attorney's and expert fees; and

      8.      Such other and further relief as this Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: Woodside, New York.
      November 16, 2018.

                        Yours, etc.

                        LAW OFFICE OF FELIX VINLUAN

                        By: _____
                            Felix Q. Vinluan (FV6788)
                            69-10 Roosevelt Avenue, 2nd Floor
                            Woodside, NY11377
                            Tel. No. 718-478-4488
                            Fax No. 718-478-4588
                            Email: fqvinluan@yahoo.com

                        LAW OFFICES OF MANUEL B. QUINTAL, P.C.

                        By: _____
                            Manuel B. Quintal (MQ5186)
                            291 Broadway, Suite 1501
                            New York, NY 10007
                            Tel. No. 212-732-0055
                            Fax No. 212-587-8933
                            Email: quintallaw@aol.com

                        *Attorneys for the Plaintiff*

## VERIFICATION

STATE OF NEW YORK   )
COUNTY OF QUEENS   ) S.S.

    I, JANNACE MOJICA, of legal age, and presently residing in Bronx County, State of New York, after having been sworn in accordance with law, hereby state that I am the Plaintiff in the within Complaint. I have read the foregoing Complaint and know the contents thereof. The contents are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

                                          JANNACE MOJICA

    SUBSCRIBED AND SWORN to before me this 16th day of November 2018.

                                          Notary Public

                              FELIX O. VINLUAN
                    Notary Public, State of New York
                          No. 02VI6129101
                        Qualified in Nassau County
            Commission Expires June 20, 2020 21

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JANNACE MOJICA, on behalf of herself
and others similarly situated,

*Plaintiff,*

    - against -                     Docket No. 18-cv-_____

NATIONAL STAFFING SOLUTIONS, INC.,

*Defendant.*

-------------------------------------------------------------x

**DECLARATION OF JANNACE MOJICA AND**
**CONSENT TO JOIN SUIT UNDER F.L.S.A.**

I, JANNACE MOJICA, do hereby swear and affirm as follows:

1.  I make this Declaration based upon personal knowledge;

2.  I am over 21 years of age and fully competent to make this Declaration. My address is 27-18 Paulding Avenue, Bronx, NY 10469;

3.  I work as a Physical Therapist Assistant for Defendant in the state of New York, and I have been working as such since approximately July 2014 to the present time;

4.  Since in or about September 2015, Defendant failed to pay me the proper or correct overtime rate whenever I worked more than 40 hours a week;

5.  I, Jannace Mojica, hereby consent to be a party/plaintiff to join this action brought pursuant to the Fair Labor Standards Act of 1947, 29 U.S.C. § 216(b).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 16 , 2018.
      Woodside, NY.

_____
JANNACE MOJICA