UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK
------------------------------------------------------------------------x

JANNACE MOJICA, on behalf of herself
and others similarly situated,

                            *Plaintiff,*          Index No. 18-cv-10735 (PAC)

            - against -                       JOINT MOTION FOR APPROVAL
                                                                    OF FLSA SETTLEMENT AND
NATIONAL STAFFING SOLUTIONS, INC.,       DISMISSAL OF CLAIMS WITH
                                          *Defendant.*         PREJUDICE

------------------------------------------------------------------------x

       Plaintiff Jannace Mojica and Defendant National Staffing Solutions, Inc., through their respective counsel of record, submit this Joint Motion for approval of FLSA Settlement and Dismissal of Claims with Prejudice.

       1.        In this action initiated on November 16, 2018, Plaintiff alleges that she worked as a physical therapist assistant for Defendant (¶¶ 6, Complaint), starting in July 2014 (¶ 26), and was not properly paid the statutorily-required overtime rate of one and one-half times the regular rate of pay for the hours that she worked in excess of forty (40) hours each workweek, starting in September 2015, when Defendant decreased her overtime rate to $30 per hour (¶35), in violation of the Fair Labor Standards Act (FLSA).

       2.        Plaintiff asserts that she was paid an hourly rate of $13.00, plus a maximum weekly per diem rate of $430.00, conditioned on her working 40 hours per week. She asserts that she regularly worked more than 40 hours per week, and that Defendant incorrectly computed her overtime rate. Plaintiff alleges that starting in September 2015, Defendant paid her the overtime rate of $30.00 per hour. She argues that under pertinent Department of Labor regulations (Chapter 32, 32d05a (b) and (c)) as well as pursuant to jurisprudence on the matter (pls. see

<u>Gagnon v. United Technisource Inc.</u>, Index No. 09-20098, (5th Cir., May 27, 2010), her overtime compensation should have been computed as one and one-half times her regular hourly rate, which would include her per diem compensation. Where, as here, the amount of per diem is based upon and thus varies with the number of hours worked per week, such per diem payments are a part of the regular rate in their entirety. Inasmuch as Plaintiff's basic hourly rate was $13.00 per hour, and her weekly per diem rate was $430.00, her regular hourly rate should have been $13.00 plus $430.00, divided by 40 hours, or $13.00 plus $10.75, or the sum of $23.75 per hour. Her overtime compensation rate should have been $23.75 multiplied by one and one-half, or $35.62 per hour. Plaintiff contends that Defendant's payment of $30.00 as her overtime rate was therefore incorrect.

3. Defendant, on the other hand, contends and denies that Plaintiff's weekly per diem compensation is required to be included in her regular rate. *See* 29 U.S.C. § 207(e)(2) (excluding "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer"); 29 C.F.R. § 778.217 ("Payments made by the employer to cover such expenses are not included in the employee's regular rate if the amount of the reimbursement reasonably approximates the expenses incurred. Such payment is not compensation for services rendered by the employees during any hours worked in a workweek.").

4. Thus, there exists a bona fide dispute between the parties with regard to how to compute the regular rate of Plaintiff, and consequently, with regard to the proper computation of Plaintiff's overtime compensation rate.

5. The parties started informal settlement discussions as soon as the summons and complaint were served, and which informal discussions continued until after much back-and-

forth settlement discussions, the parties eventually settled at a mutually-acceptable amount, and advised the Court on February 4, 2019 that they have resolved their disputes, and that they would shortly submit their Settlement Agreement and their joint motion for the approval of their FLSA Settlement.

6. Without admitting any liability, Defendant has agreed to pay Plaintiff the difference between the overtime compensation Plaintiff was actually paid by Defendant ($30 per hour), and the amount of overtime compensation Plaintiff would have received had the weekly per diem compensation been included in her regular rate ($35.62 per hour). Inasmuch as the number of overtime hours worked by the Plaintiff was not an issue, the computation was limited to the difference between the two competing overtime rate positions.

7. Furthermore, the settlement was arrived at by the parties before Defendant filed its response or answer. Part of the settlement discussions was the possible counterclaims that Defendant could have raised had it filed its Answer. There were a couple of previous agreements between the parties, directly and through their agents or recruiters, whereby Plaintiff agreed to work for Defendant for at least 30 months or 5,000 straight hours, and whereby Plaintiff executed a promissory note in the amount of $40,000 as and by way of termination fee or as her liability were she to preterminate her employment agreement. Without dwelling into the legalities of these agreements or the defenses that Plaintiff might raise, the parties have agreed in this case that Defendant, in addition to paying the difference between the two overtime compensation rate positions, would waive any rights it might have against Plaintiff from these agreements, including the agreements and promissory note with Defendant's predecessor-in-interest/agent/recruiter, Overseas Manpower Solutions Corp. Plaintiff, however, would honor her commitment to continue working at the healthcare facility where Defendant had assigned her,

until and unless she tenders a two-week notice. Defendant further agreed to release Plaintiff from any restrictive covenants they might have agreed upon, subject to the independent decision by the healthcare facility where Defendant assigned Plaintiff whether or not it would directly hire the services of Plaintiff.

8. The parties, through this motion, seek approval of settlement of Plaintiff's FLSA claims pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). The parties have memorialized their resolution of Plaintiff's wage claims in a Negotiated Settlement Agreement and Release (hereinafter, "FLSA Agreement"), attached hereto as **Exhibit "A"**. The FLSA Agreement has already been signed by Plaintiff and Defendant.

9. As stated above, the parties have entered into this Negotiated Settlement Agreement with the Defendant knowingly waiving its possible non-FLSA counterclaims arising from contracts the parties had entered into.

10. This case was settled following several discussions between counsel which started as soon as the Summons and Complaint were served on Defendant. Limited discovery took place, when the parties exchanged information regarding number of hours worked and amounts of compensation paid and received.

11. Plaintiff's counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and the Defendant. If Plaintiff's claims that she regularly worked more than 40 hours per week and that she was regularly paid, in addition to her basic hourly rate of $13.00, the amount of $430 in weekly per diem compensation if she worked at least 36 to 40 hours per week, and which weekly per diem compensation was decreased pro rata if she worked less than 36 hours per week, were correct, then pursuant to Department of Labor regulations, the weekly per diem

4

compensation would be considered and included in the determination of her regular hourly rate. Plaintiff's regular hourly rate would not be her basic hourly rate of $13, but the sum of the basic hourly rate of $13 and the weekly per diem compensation of $430, divided by 40 hours. Plaintiff's regular hourly rate would be $23.75. Consequently, Plaintiff's overtime compensation rate would be one and one-half times $23.75, or $35.62. Thus, if Plaintiff were to prevail on her claim, she is looking at recovering the difference between the $30 overtime rate she was actually paid, and $35.62, or $5.62, multiplied by the number of overtime hours she actually worked.

12. Defendant, however, vigorously disputes the determination of Plaintiff's regular hourly rate. It holds the position that the weekly per diem compensation is not to be included in the computation of Plaintiff's regular hourly rate as the same was allegedly for the reimbursement of Plaintiff's travel, meals, and accommodation/housing expenses, Plaintiff being considered a travelling therapist.

13. The parties agreed to fully and finally resolve Plaintiff's claims by having Defendant pay the total amount of $24,535.56, a sum that consists of $8,178.52 in unpaid FLSA overtime; $8,178.52 in liquidated damages; and $8,178.52 in attorneys' fees and costs. The payment will have to be made and distributed on or before 10th business day after the Court's approval of this motion. By agreeing to these terms, Defendant does not admit that it violated any federal, state, or local law, rule or ordinance, or that any action it took with respect to Plaintiff was wrongful or unlawful.

14. In *Cheeks*, the Second Circuit ruled that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Cheeks*, 796 F.3d at 206.

15. The parties represent to the Court that the FLSA Agreement: (a) is reasonable to all parties; and (b) demonstrates the good faith intention by the parties that Plaintiff's claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future. The parties believe that their settlement is reasonable because they reached an agreement with respect to the monetary terms of the settlement after substantial negotiations and discussion.

16. In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply a five-factor test as articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.* With respect to plaintiff's FLSA claims, her range of possible recovery extends up to $8,178.52 in unpaid overtime pay. Parties exchanged notes on number of hours worked and on amounts of payments made, and they agreed that Plaintiff was not properly paid overtime for 1,520.17 hours. If Defendant is liable for $5.62 in unpaid overtime per hour, then Plaintiff would be due the maximum amount of $8,178.52 in unpaid overtime compensation. Plaintiff, pursuant to the parties' settlement agreement, is to receive the amount of $8,178.52 in unpaid overtime pay, and the same amount of $8,178.52 in liquidated damages.

17. Accordingly, based on the above, regardless of how the various factual and legal disputes might ultimately be resolved, the settlement provides for a reasonable amount of Plaintiff's possible FLSA recovery and is a fair resolution.

18. The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation omitted). Settling Plaintiff's claims at this point will avoid continuing litigation costs for all parties. Had this action

6

not settled, there would have likely been discovery practice, including depositions, dispositive motion practice, and probably a trial. Settlement at this point will obviate that time-consuming and expensive litigation.

19. The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the risk of losing. There clearly is a dispute between the parties over the issue of whether or not the weekly per diem compensation is to be included and factored in in the determination of Plaintiff's regular hourly rate, for overtime compensation computation. The Court may decide either way. The agreed settlement amount of $24,535.56 would obviously be in jeopardy if the case went forward.

20. The fourth *Wolinsky* factor examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel." *Id.* (internal quotation omitted) As mentioned above, the parties reached their agreements only after undertaking substantial negotiations and bargaining between counsel of record.

21. The parties are represented by experienced counsel. Plaintiff's lead counsel, Felix Vinluan, has been representing immigrant workers for the past 20 years, the last 10 of which have been almost exclusively concentrated on employment law, primarily in wage and hour matters. Defendant's corporate counsel, Keith Hammond of Hammond Law Center, and its New York retained counsel, Jason Zoldessy of Jackson Lewis, P.C., both have substantive experiences in handling employment and labor law cases, including wage and hour cases, mostly on the management side.

22. The fifth *Wolinsky* factor examines the "possibility of fraud or collusion." *Id.* There was no fraud or collusion in this case. The settlement was achieved after months of back-and-forth negotiations, which enabled the parties to fully evaluate and appreciate the benefits to

this resolution. The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. There are no indicia of any fraud or collusion in this case.

23. Further absent are any factors that would weigh against the Court approving the FLSA Agreement. Plaintiff Mojica is the sole plaintiff in this case, and she alone will be affected by the dismissal. *See Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015). Although Plaintiff continues to work for Defendant up to the present time, there is no reason to believe that Defendant used improper leverage to obtain the settlement. *See Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014). Plaintiff's complaint also does not "raise novel factual or legal issues that would further the development of law in this area." *Santos*, 2016 WL 2757427, at *3.

24. Finally, the FLSA Agreement contains a release that is tailored to Plaintiff's wage-and-hour claims. The Agreement contains a release provision that is not pervasive in coverage, and is restricted to claims brought by Plaintiff, and insofar as Defendant is concerned, restricted to the possible counterclaims that Defendant could raise which accrued only during their employer-employee relationship. Further, the FLSA Agreement does not contain a clause that would unreasonably restrict Plaintiff from disclosing the terms of the FLSA settlement reached here, which insures that the Agreement does not "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Restaurants Inc.*, No. 14 CIV. 2740 AT GWG, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (internal quotation omitted).

25. In addition to assessing the reasonableness of the settlement award, "the court must also assess the reasonableness of any attorneys' fee award." *Scherzer v. LVEB, LLC*, 2015 WL 7281651, at *1 (E.D.N.Y. Nov. 16, 2015) (citing *Wolinsky* 900 F. Supp. 2d at 336). Courts

examine attorneys' fees in FLSA settlements "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Here, the $8,178.52 payment to Plaintiff's counsel consists in part of the reimbursement for litigation costs that were necessarily incurred to prosecute the FLSA claims. *Santillan v. Henao*, 822 F. Supp. 2d 284, 301 (E.D.N.Y. 2011) ("As a general matter, a prevailing plaintiff in an action under the FLSA or New York's Labor Law is entitled to recover costs from the defendant."). Between the court filing fee and process server fees, Plaintiff's counsel had spent $545. After deducting the litigation costs from the $8,178.52 that Plaintiff's counsel were to receive under the FLSA Agreement, counsel is to receive $7,633.52 in fees in connection with the FLSA settlement, which amounts to approximately 31.1% of the total that Plaintiff is receiving under the FLSA Agreement. This is obviously well less than the standard one-third settlement, a percentage that is "consistent with the trend in this Circuit." *Kochilas v National Merchant Servs., Inc.,* 2015 WL 5821631 (E.D.N.Y., Oct. 2, 2015).

26. In any case, Plaintiff's counsel respectfully manifests in his Declaration that he has expended no less than 23 hours and 20 minutes, for this case. By any reasonable standard and using any plausible billing rate, the fee award requested herein is warranted. Assuming an hourly billing rate of at least $350, Plaintiff's counsel would have been due the amount of $8,165.50. Together with the litigation costs of $545, Plaintiffs' counsel would have been due the total amount of $8,710.50. Plaintiff's counsel has agreed to forego receiving the amount of $8,710.50, and will accept the lesser amount of $8,178.52 as his attorneys' fees.

## CONCLUSION

WHEREFORE, the Parties to this action respectfully request an Order:

1. Approving the FLSA Agreement between Plaintiff and Defendant;

2. Dismissing with prejudice the claims of Plaintiff against Defendant, and;

3. Closing the case.

For the Plaintiff:                                              For the Defendants:

By:                                                             By:
   *s/ Felix Q. Vinluan, Esq.*                      *s/ Jason A. Zoldessy, Esq.*
   Law Office of Felix Vinluan                       Jackson Lewis, P.C.
   69-10 Roosevelt Avenue, 2/F                       666 Third Avenue, 29th Floor
   Woodside, NY 11377                                New York, NY 10017
   Tel: (718) 478-4488                               Tel. No. 212-545-4000
   Fax: (718) 478-4588                               Fax No. 212-972-3213

Dated: February 13, 2019